Good morning, Attorney Michelle Mankin arguing on behalf of the Appellant Michael Gordon. With the Court's permission, I'd like to reserve two minutes for the rebuttal. Yes. May it please the Court. I'll first briefly touch upon Argument 2 in Appellant Gordon's brief regarding the District Court's failure to conduct a de novo determination of the disputed credibility issues in the Magistrate's recommendation on the motion to suppress. This is really a constitutional issue. Gordon. Excuse me, Counsel. How do we know the District Court didn't conduct a de novo review? Well, to be sure, the District Court didn't say exactly what the Court relied upon in renewing upon the objections. But it may fairly be inferred from what is in the record that the District Court did not listen to a recording, the audio of the testimony. How can we draw that inference? Because the Court several times discussed the concern over having to make this determination on the basis of the papers alone. That was said repeatedly. And then ultimately, the Court said, I've made this determination on the basis of what's been made available to me. And we know from the proceedings that what had been made available were the objections and the memoranda on the question of the de novo determination. And nowhere is it said that the audio was made available. There's no citation to the audio in the parties' filings. And there's just no basis, especially given the Court's consternation over having to make the determination on the basis of the papers, to infer that the testimony was listened to. And when the judge is talking about how to make this determination, the judge is repeatedly saying, I have to do this on the basis of the papers. But you apparently have a concern that the judge may not have conducted a proper review. That's the concern you're expressing today. That's correct. But you nowhere express that concern to the District Court, and you nowhere file by a motion for reconsideration or some other means something before the District Court in an attempt either to clarify the record or to make it clear exactly what review the District Court conducted. And you want us, despite that failure, to entertain this claim as what? A claim of plain error? Well, as I said... I'm asking you, on what basis can we entertain a claim that was never raised before the District Court? So clearly the specific claim that the judge should listen to the audio or read the transcript was not set forth by Gordon or his counsel below. It wasn't set forth either before or after the District Judge made his decision. In other words, there was no request prior to the decision and no motion for reconsideration or other filing subsequent to the appeal. By defense, that's correct. However, the government's pleading did alert the court to the obligation to review the audio or the transcript repeatedly. So that information was before the judge, and I would submit that Gordon was entitled to rely upon that, and that his objection to the court's failure to rehear the evidence preserved the issue for this court's review. What was the precise ground asserted to the District Judge as to which you said there was error? A prior counsel said. I take it you're a successor counsel. I am successor counsel, and trial counsel below urged the court to rehear the evidence. No, no. What was the claimed error that was made? You have started with the assumption that credibility was a key issue in light of the argument as to error, and I think that's quite dubious. Now, I did misunderstand the court's question before. So the question is, so if these credibility determinations had come out in Gordon's favor, what was the argument made to the district court that the magistrate judge had erred in determining not to suppress the evidence? So the Gordon's trial counsel below did object and did incorporate the pleading, the memorandum that had been submitted to the magistrate. You answered my question. Yes, and so in those pleadings, the argument was that there were questions of whether the duration of the encounters with the TSA and with the Mass State Police, whether Gordon had been told or when Gordon had been told that he could go, whether the state police maintained his boarding pass and I.D. during the encounter, and whether Gordon had consented to speak to wait or to speak with the agency. There were various issues about the evidence that was obtained at the airport, and the district judge said, ah, but that was a number of months prior, and your client and his counsel actually voluntarily went in to talk to the investigators and said mostly the same thing. So the district court relied on attenuation, and if that is the case, why is credibility an issue at all? Well, it's a fair question, and the answer is because the magistrate's finding of attenuation lacked sufficient evidentiary basis. The defense did not appear to be contemplating disputing the evidence on attenuation. There was no witness there to talk about attenuation. The magistrate judges the outcome. I just don't see error as to the finding of attenuation. The error is in what the argument made to the district court. The district court said, look, as a matter of law, what happened at the airport was too long ago, and in any event, it was the interview which produced the evidence which led to the further search warrants. So the objection to that is that there was insufficient evidence of attenuation, even if you took Atwood's affidavit as true, it lacked evidence on key points. So we don't know the nature of the invitation. We don't know why Gordon went with his counsel to speak to him, or whether there was a degree of compulsion there that would defeat the dissipation of the taint. So if that's your argument, credibility has nothing to do with it. Right. Well, I think there were two... Stick with attenuation. Credibility has nothing to do with it. Correct. You're saying that the evidence was insufficient as a matter of law to support the finding of attenuation. Correct. Okay. All right. Now, it's correct that that's your argument, not necessarily that that's the correct conclusion. Is there a question performing on this? Not for me. Perhaps you should move on to another argument. Thank you. So I'd like to turn the court's attention to the issue of the jury voir dire. And there was a lot of back and forth in our briefs characterizing what happened in the record. And for purpose of clarity today, I'll draw the court's attention to, and they're cited in the briefs, but there are no less than four clear instances of potential jurors who were... Okay, before you go into the four, as I understand the record, there was an objection made only as to excusing one juror. And that was because in a marijuana drug distribution conspiracy case, this guy wanted to set up his own marijuana shop or work for one. And the judge said, gosh, that's a sort of obvious conflict of interest. Therefore, I'm dismissing this juror for cause. All right. That's one. Then there are others as to which no objection was made, and it is plain error of review. Correct. Correct. All right. So which do you want to argue? Is there something wrong with the judge's ruling on the one objection you preserved? Yes. So there is a problem with that, and what the juror actually said is, I'm trying to get employed in the industry. There was not the specifics that Your Honor was just recounting. It was just, I'm trying to get employed in the industry, and there was no follow-up questioning at all. So getting involved is either ownership or employment, right? Correct, at some nascent stage. So I realize that we're dealing with plain error here for the bulk of the claim. But in either circumstance, the problem is similar, which is that the judge excused potential jurors without a showing on the record, in the case of this juror that we were discussing or several others as to which there was no objection made. They excused these jurors without a showing on the record that their ability to perform their duties to faithfully apply the law was substantially impaired by views that they expressed regarding sort of the status now. I'm sure as to the jurors as to whom no objection was made, that each of those jurors expressed doubt about his or her ability to adjudicate a matter fairly or to put aside extraneous considerations. I think it's true that the majority of them that did say it weren't true. I think it's true that all of them, the three that you're talking about as to whom no objection was made, I mean, this wasn't a blanket excusal. Anyone who mentions the word marijuana is excused. The judge asked individualized questions of particular jurors, and if a juror expresses uncertainty about his or her ability to decide the merits of a case squarely, I would think that all parties, the government and the defendant, would want the judge to let that juror go and to see jurors who don't doubt their ability to be fair. I see my time is almost up, and I hope I'll be able to finish the answer to this question, but we are talking about plain error reviews, so the question of sort of the public integrity of the perceivings when this issue arises is important. And this will likely arise again. So our position is that there's really not a significant difference between excusing a juror without any follow-up questioning at all and excusing a juror with an improperly sort of misguided set of follow-up questions. And just because a juror says, I'm not sure that I can put my personal perspective on the world out of the jury room entirely, does not disqualify that juror. And that's the crux of the issue here. Was their questioning sufficient to determine whether these jurors could, notwithstanding those personal views that, of course, they can't put aside, could they apply federal law to the evidence that was presented to them? That was the crux of the question, and in many instances cited in our briefs, the questions did not get to the nub of that. And I think we also demonstrated that when the judge did get to the nub of that, jurors were a lot more likely to say, oh, yeah, I can do that. I can apply the law. I understand. But I can't say that I can shut off, you know, the lens through which I view the world. If there are no further questions, we'll move on. Thank you. Thank you. Good morning. May it please the Court. Alexis DeMocentis on behalf of the United States. The defendant's argument concerning the de novo determination here, as Judge Lynch noted, starts with the assumption that credibility matters. And in this case, it does not for the simple reason that whatever happened at the airport encounter here, this is a clear case of attenuation. The investigation into this defendant began as a result of statements that he made a full five months after the airport encounter when he decided to meet on the advice of his counsel and in the presence of his counsel with investigators, responding to an invitation that, by the way, was only made after counsel had affirmatively reached out to investigators in order to offer information and documentation. Rather than attack the legal merits of the attenuation argument, the defendant here has argued that the attenuation ruling lacked any basis in the record for the reason that the Atwood affidavit was either not entered into evidence, neither his testimony nor affidavit was entered into evidence after evidentiary hearing. But I think that argument misses the point that an evidentiary hearing on this issue was not required unless the defendant put in dispute facts material to an attenuation determination. And the defendant here never did that. I'd like to go back to some questions that Judge Selya asked. Our district judges all the time have to review magistrate judge rulings, and pretty much we've left it to the district judges to make their own determinations as to how much they need to review. And, of course, if credibility really isn't involved, then the argument for it, you have to read all the evidence, goes away. But I worry a little about imposing on defense counsel an obligation before that review to say, actually, judge, in order to do your job, you are going to have to review the transcript. It may be a different matter if after the decision comes down and it is absolutely clear that there was no review of a transcript and credibility was at issue, that maybe defense counsel at that point does have some sort of obligation to speak up. I understand the concern, Your Honor. And to be clear, we're not suggesting that before the fact there was a requirement that the defendant specifically alert the district court to this obligation, although on this record I think it's clear that the district court was alerted by way of the government's pleadings. Here, though, what we have is an example in which the district court, there's imbuing on the record as to what exactly happened, and at that juncture we do think it is incumbent upon the defendant to say that although he had requested a new hearing, to say that, by the way, judge, in the course of denying our request for a hearing, it appears, perhaps, that you have failed to... has held an evidentiary hearing, and there's a recording. I take it there's always a recording. That's my understanding, yes. Does the government always provide that to the reviewing district judge? Well, to be clear, the recording is in the government's possession. In other words, in the prosecutor's possession. It's something that's maintained by the court reporters themselves. That's usually done by the magistrate judge's court reporter. Precisely. I'm not aware of any authority that says De Novo Review has any requirement that a judge conducting De Novo Review review an actual transcript or listen to a recording of a hearing. He clearly has to read all the documents that are proffered to him or her, and to review the magistrate judge's determination. But is the government aware of any case law that says that De Novo Review in a suppression case requires the district judge to do more than that? The case law that I'm aware of would suggest that part and parcel of a De Novo determination is a review either of the transcript or listening to the recording. Standing here at this moment, I'm not entirely certain that there is case law that has squarely decided the issue as opposed to making those statements in the course of DICTA describing the De Novo determination. Well, this hardly strikes me as the case in which we would want to set down any sort of rules about this. I think that's exactly right, Judge Lynch. Again, whatever happened here with regard to the credibility determination review, it simply doesn't matter on these facts where we have such a clear case of attenuation. Okay, on the jury issue, given the legalization of marijuana in Massachusetts, this issue of jurors is going to be an issue that repeats itself. Again, I'm not at all sure that it's up to this court or wise for us to get into what are appropriate questions. But are there any sort of stock questions on this issue? Stock questions, as in some suggestion from this court as to what the question is. No, not from this court. At the district court level. No, the case law is very clear that this court and other courts of appeals, and indeed the Supreme Court, have specifically refrained from prescribing a certain set of questions that should be asked. But I think the question is, as a matter of practice, do district judges in the District of Massachusetts have some uniformity in the type of questions they have been asking about this issue when they impanel jurors? I'm not aware of any sort of shared stock set of questions that the district court judges here have. At bottom, the relevant point is that the district court has to ensure that it is excluding people not on the basis of their beliefs, which, as the district court here set out from the beginning, they are entitled to have, but rather because those beliefs are going to interfere with the potential jurors' ability to be fair and impartial in this case. And the defendant has taken issue with the government's characterization of some of these individuals as having suggested through their words that, in fact, they were incapable of being fair and impartial. But I would urge the court, to the extent it hasn't done so already, to read the exchanges that the defendant highlights in their entirety. To use just one example, Juror T.T. was a medical marijuana patient who had many close friends and relatives who the jurors said had been adversely impacted by federal policy. And the judge asked whether this was going to affect her judgment, irrespective of the evidence in the case and the court's instructions on the law. Her response was, yeah, I do believe so. And I think the suggestion that that response is somehow anything other than a clear indication that the juror can't be impartial is simply untenable. And I would just add to the fact that, in addition to what I would say are very clear verbal indications of the inability to be impartial,  it's been said that deference to the district court is at its height when we're talking about determining impartiality. And that's for good reason, because only the district court with the benefit of tone and demeanor can determine whether answers are set with clarity and conviction. And on this point, I think it's quite relevant that, as was noted, the defense counsel did not bother to object below to the exclusion or the formal questioning of any of these jurors, save for the juror who was looking for an employment that was engaged in the very type of activity that was being talked about. Don't you think it's fairly predictable that people who don't want to serve on the juries in these cases are going to say, oh, I'm interested in finding a job in the industry? I would be speculating to answer that question, Your Honor. I think that the bottom line is that when a juror does indicate that they are looking for employment in an industry that is engaging in behavior that is illegal under the very federal law that is being prosecuted in the case, the district court is acting well within its discretion in concluding that that juror should not be seated. Unless there are any further questions, the government would rest on its breath. Good. Thank you. Just very briefly, since I had the moment. There was a question about whether there was case law, back to the first issue. Leaving aside the question of whether this court wants to wade into this in this case, the answer to the question of whether there is case law requiring this sort of review is that in the Eighth Circuit, Tenth Circuit, Fifth Circuit, and Eleventh Circuit, the law is that when the defendant objects on the basis of credibility determinations that have been made after hearing testimony, the district court is obligated to, the review has to include listening to the hearing or reading the transcript. If not, you don't have to re-hear it. And then just my sister's argument about, of course, on the second issue, the district court's ability to observe tone and demeanor and things like this. I just would caution, again, leaving aside the question of whether this is the case where this court wants to wade into this, the district court could use some uniformity and guidance so that there's not sort of implicit bias for other judges. There is a federal public defender's office and a CJA panel which could start working on this issue and make suggestions to the district court. And, of course, the U.S. attorney can respond to those suggestions. Of course, just a suggestion. I'll see you the rest of my time. Thank you. Thank you.